** Alright, welcome everyone. Okay, the next argued case is number 172112, Vint Incorporated against Alarm.com, Incorporated. Mr. Stern. ** Good morning, your honors, and may it please the court, Robert Stern for Pat Nono-Vivin. There is no substantial evidence to support the board's finding that the challenge claims are anticipated by Osmond. Osmond is silent for the claim limitation displaying a map. Petitioner had their expert opine that a pasita reading Osmond would interpret the silence as an explicit disclosure that the displaying a map limitation occurs at step S12 or later. But express anticipation cannot meet, cannot be met unless all claim limitations are explicitly disclosed in a single reference. Silence is not disclosure. Silence does not allow for gap filling using testimony from an expert or from speculation for the board. For this reason, the anticipation rejection of all of the challenge claims should be reversed. Moreover, claims 18 and its counterparts, claims 36 and 54, were also found anticipated by Osmond based on a claim construction first articulated by the board in the final written decision that was contrary to the claim construction used by both parties throughout the trial. This is a violation of section 554 of the APA by the board because neither party had notice or opportunity to address this new claim construction. This APA violation is not harmless because the new claim construction read out the processing operation from the requirement of modification in the claims, allowing the board to ignore the silence in Osmond that the modifications to the boundary limitation was not disclosed. But again, Osmond is silent about any modification of a boundary on a map displayed by a user. For this additional reason, claims 18, 36, and 54 are patentable and the board's anticipation finding should be reversed. So your honors, this is very similar to the NIDAC decision from this court and others where we have express anticipation and the reference does not show, does not disclose the missing element. The missing element here is displaying a map to a user. It's in all the claims and that is never, ever disclosed in the Osmond patent. Why isn't 8A a map? Why is 8A and 8B a map? The board assumed, your honor, that it is a map under their definition, but it's never displayed to the user. So for purposes of argument, let's assume it is a map. How can we see it if it's not displayed? Because it could be a spatial representation, as the patent explains, of how the boundary point and the reminder profile, as it's called, is set forth in terms of spatial relationship or temporal relationship. But it doesn't say ever in the patent that what is shown in 8A or 8B is ever displayed and we don't know if any information, any information whatsoever in any form is displayed to the user. All we know is that the profile editor allows the user to define the reminder profile and to modify the reminder profile. This is an anticipation projection, not obviousness. Correct. And if we go with the board's decision, we have entered the slippery slope, we submit, your honor, of obviousness. Because this is express anticipation, and under express anticipation, there is no disclosure. And if there is no disclosure, the board, perhaps, should have gone to obviousness, but they did not. So we submit that the express anticipation rejection should be reversed. Was it instituted only on anticipation? Yes, your honor. Only on express anticipation. And I think it's illuminating if we look at exactly what the board said. So, if you're right, what would, then, this is, it seems to me, raises a SAS problem, because while it was instituted only on anticipation, obviousness was a separate alleged ground, which the board didn't institute on. And under our precedent, following SAS, it seems like, if we agree with you, then we vacate and remand, and they have to address obviousness. I don't see how you could possibly prevail on obviousness, given figure 8A and 8B. So what's the point? Oh, the point, your honor, is that they shouldn't get a second bite at the apple, to use that colloquial phrase. Well, they do, because of SAS. The PTO messed up and didn't institute on the whole thing, like they were supposed to, to come up and waive their SAS argument, which I doubt, after what I've just said. But, so, the PTO messed up. They didn't properly institute on their entire petition, as SAS requires them to do. So it's not about, they shouldn't get a second bite. The PTO messed up. They never got their first bite, because the PTO didn't review their entire petition, which the Supreme Court says it was required to do. I have two answers for your honor, and thank you for asking about SAS. This proceeding should not be remanded under SAS, because petitioner forfeited the issue by not raising it until now. It's been 78 days since SAS was handed down. No notice or opportunity to address this issue occurred until today. The SAS issue is not jurisdictional, as stated by the court in its PGS decision, so it's been forfeited. And going to your other point, Judge Moore, if I may. So you think in the 78 days since SAS issued, they should have made a SAS motion at that point in time? Yes, your honor. I'm not ready to deal with the SAS motion, other than I anticipated, if you will, that it would come up. And going to your other point about obviousness, we're not conceding that this invention is obvious. Well, I don't know what you mean by saying you're not ready to deal with it. There's really nothing to deal with. Our precedent is quite clear. I mean, the only argument you could make is that 78 days, which you've made, ought to be the bright line rule, and we say if you haven't done it by now, nobody else gets to do it. I mean, that's the only argument you have, because the rest has been clearly resolved by our court in the two precedential decisions we've issued. Well, your honor, I think it would be opportunistic, if you will, and unfair to us if this was remanded, because the petitioner had ample opportunity to raise SAS, but since they won below on anticipation, they're going to wait until their argument, and if they sense that you are going to reverse on anticipation, of course they'll raise SAS as the basis for remand. But that's unfair to us. If they really wanted to do this, they should have done it by now, so that we could have addressed this in terms of briefing before today's oral argument. You would say that they have a lot of SAS. They have a lot of SAS, your honor. And in this, going back to Judge Moore's point, like, did they, you know, should they have done it sooner? Well, in Nike versus Adidas, they did exactly what I'm asking for, should have been done. And going to the obviousness point that Judge Moore raised, we're not conceding that they can meet the missing element requirement under obviousness, even if this case is remanded to the board, because, frankly, they can't. Because the point is, the missing element is not in the primary reference. And we would argue that anything else that they would combine it with would not be permissible to supply the missing element. If displaying the information was what Osmond was about, they would have stated it. And to allow an expert under the rubric of construing a term or interpreting a specification to supply the missing element converts this case from express anticipation to obviousness. So, your honors, I will reserve the rest of my time. Thank you, Mrs. Jarrell. Ms. Shinkoraka. Good morning, your honor. May it please the court. My name is Tina Shinkoraka on behalf of FLAalarm.com. To take the issues in order that Vivian raised, with regard to express disclosure and the display of a map, Osmond is not silent as to that point. Osmond is not ambiguous. There are express disclosures in Osmond that teach the display of a map. For instance, in paragraph 31, appendix 734, a profile editor is activated. The profile editor enables the user to edit his reminder profile. Later in paragraph 31, the editing can occur via a man-machine interface, such as a display and keyboard, or any other suitable input-output mechanism, such as a mouse or stylus with touchscreen display. In paragraph 33, there's a reference to figures 8A and B. Judge Lloydy, you had talked about that this is subsequently explained in greater detail with reference to figures 8A and 8B, which the board found were maps and which Vivian does not contest are maps. Osmond includes references to a display, a man-machine interface such as a display in paragraph 31 on appendix 734, and a touchscreen display also in that same paragraph in appendix 734. In other words, the word display is actually used. The word display is actually used. Furthermore, in paragraph 34, there are references to highly complex geometric boundaries, such as ellipsoid shapes, spline shapes, polygonal shapes, or any combination thereof. And those kinds of shapes, as both experts testify, are not ones that can typically be drawn with equations, but rather are ones that would typically be done with a display. So for all of these reasons, including the fact that Dr. Ryan, which the board credited his testimony, was not inferring or adding a limitation, but rather he read the limitations of Osmond and he said that what a faceta would understand reading Osmond is that there was a display of a map. There was no inference. There was no addition of limitations. This is not, Your Honors, like the NIDAC case in which, if I recall correctly, it involved a stationary and a rotating rotor. And in that situation, there were signals that were used to invalidate the rotating rotor using stationary signals, using the reference currents Iu, I sub v, and Iw. But those were not found in the rotating reference. So those were supplied and added to the rotating reference in order to invalidate that patent. That's not the case here. In this case, Dr. Ryan didn't say something was missing. He didn't add a limitation. He said reading the express disclosures in Osmond, a faceta would understand then to teach the display of a map. And that's not the same thing. What's actually happening here is not the addition of a limitation, but rather disagreement with Dr. Ryan's conclusion. And Dr. Ryan's conclusion is that taken together, Osmond displays a map, and that's what the board found is a display of a map. With regard to an additional argument they make, which is that there is no display because the profile editor is active at step S12 before the information is necessary to generate Figures 8a and 8b is available. Well, nothing in Figure 1, located at Appendix 724, states that a display does not occur. It could still occur. And, frankly, looking at Figure 1 at step S12 in isolation divorces it from the specification of Osmond, which, as I mentioned before, talks about editing. It talks about a stylus. It talks about a display. It talks about a keyboard. It talks about Figures 8a and 8b, which are not contested to be maps, and it talks about complex geometric shapes. So read all together, what Dr. Ryan said was a faceta would understand those disclosures to mean the display of a map. Moreover, there is no temporal requirement for when a map is to be displayed. So whether or not the map was displayed before S12 in Figure 1, taken together the display of a map is clear from Osmond. Second, on the issue of the SAS issue, just to address that briefly, Judge Moore, our position is that we did not need to raise it before, and if the Board does not find that there is substantial evidence to support the Board's finding, then the proper recourse is to remand the issue to the Board to address the uninstituted grounds, including, for example, I believe Grover. You haven't requested such a remand. Is that right? That is correct. We had not before this point asked for that. That is correct, Your Honor. I do not believe, however, that there was a requirement that we needed to do so by now, but you are correct. In answer to your question, we had not yet requested it. With respect to the second issue, which is the— Did you say we haven't done so until now, or did you say we haven't done so? And by the way, requesting remand doesn't mean we don't necessarily address this issue, and if it potentially resolves the case, there's no need for a remand. It's in the alternative argument, so I'm trying to understand what you're saying. What I'm saying is if Your Honors do not find that there is substantial evidence, then we would request that the issue be remanded to the PTAB in light of SAS to consider the other grounds. Well, if there isn't substantial evidence, you lose. You don't get a second bite at the apple. However, on that ground, Your Honor, yes. However, because there are uninstituted grounds, our position would be that we're entitled to a remand for the board to consider alternate grounds. Well, you didn't ask earlier. You waived it. You are correct that we did not ask earlier. I did not read SAS as requiring raising the argument at a certain point, but you are correct that we have not yet. We did not yet raise it. That is correct. Orderly judicial process would seem to require parties to timely raise an issue if and when it arises. You can't just spring this on the other side without any sort of notice to make a formal request now for a significant procedural change. Well, respectfully, we don't read SAS that way. That is a fair point. However, our position is that there is substantial evidence, that the record is clear, that there is no need to reach the SAS issue because Osman teaches the display of a map, and that's what the board found, and Dr. Ryan did not. It's not ambiguous. Dr. Ryan did not supply any limitations. Osman is not contradictory. Taken together, the disclosures in Osman, when a facetor reads them, teach the display of a map. So our position is that there is substantial evidence to support the board's position. On the second issue, which is whether or not the board, in purportedly construing the term receiving modifications, violated the APA, our position first is that there was no construction. The board simply said that they were proceeding under the plan of ordinary meaning. However, even if there were a construction, that is not sufficient to create an APA violation. We need at least two other things. We needed a change in course, a midstream change in course, and that the parties were not on notice and did not have an opportunity to be heard. Neither is the case here. In the institution decision, the board did not construe the term, which means that the board was proceeding under the plan of ordinary meaning. In the final written decision, if you take their view that they were proceeding under the plan of ordinary meaning, as a construction, that's exactly the same position. There was no midstream change. It's identical. Secondly, Vivint was on notice. A party who does not request claim construction is on notice that plain meaning of a term applies. Now, they actually go on to say that they have consistently argued that modifications to the claim boundary were received and processed, and if that is their position, they took that position. Prior to the institution decision, the institution came out. They knew the term wasn't construed. They made whatever arguments they made. They were not surprised that the board hadn't construed it previously, so they cannot claim surprise. And the fact that the board potentially, according to their argument, construed the term for the first time in the final written decision is not impermissible. The issue is whether there's a midstream change and whether or not they had the opportunity to be heard. And on both those scores, the answers are not in their favor. But even if there was an APA violation, the error was harmless because the board's construction is the correct construction. What they said was that receiving modifications means receiving, and it does not include processing. And that meets the broadest reasonable interpretation standard. The claim language does not require that receiving includes processing, reading the claims. Furthermore, the specification has multiple embodiments, which distinguish between receiving and processing. So if I can direct you to Appendix 62, column 5 of the 713 patent at lines 8 through 11, it says, for example, a map may be displayed with the current location indicated by a marker and a drag event dragging the marker to an adjusted location may be received. Right after that, in another example, a boundary of a region within which the alert may trigger may be displayed and modifications such as dragging the boundary may be received and processed. So the specification draws a distinction between receive and process, and that's exactly what the board found. Furthermore, there was no disavowal of claim scope, and limitations from the specification can't be imported to limit the claims. Here, the patent owner specifically said receiving modifications to the boundary, which the board interpreted to mean receiving. Now, in the reply, Vivint makes an argument that, respectfully, they didn't make before, which is that that interpretation is inconsistent with Claims 1 and Claim 18, where Vivint's position is that it would make no sense if receipt only meant receipt and didn't require processing. But Claim 1 simply says receiving a specification of a first location. That could simply mean receiving coordinates. That has nothing necessarily to do with processing. And similarly, in Claim 18, which is one issue, the claim says receiving a specification, which includes both displaying a map and receiving modifications. So there's no requirement that processing occurs, even under the claim language. So the correct construction, as the board found, assuming it's a construction, is receiving modifications without processing. But even if Vivint is correct that the construction should include processing, then Alarm.com should still prevail. Because Osmond's disclosures, there's substantial evidence to support also processing under Osmond. For instance, Osmond talks about enabling a user to edit his reminder profile via a man-machine interface, such as a display and keyboard, or any other suitable input-output mechanism, such as a mouse or stylus. And Dr. Rind speaks to this issue, where he's answering questions from counsel. No, but that's one of the common usages of a mouse or a stylus with a touchscreen. I don't think they, they being Osmond, ever used the word drag, but I think that's what one of ordinary skill in the art would understand you would do with a suitable input-output mechanism, such as a mouse or stylus, or with a touchscreen as well. And so Dr. Rind's testimony confirms that if a cedar reading Osmond would understand not only the receiving of modifications, but the processing of modifications. So even if there was a construction, and even if there was an APA violation, the error here is harmless, even under Vivint's own construction. So under no scenario could Vivint prevail on Claim 18 either. So for those reasons, we would respectfully request that the Board's decision be affirmed. However, with regard to the Claim 18 issue in particular, if the Court does not find that there is substantial evidence in the event that the construction was incorrect and that the parties didn't have a chance to be heard, we would request that the issue be remanded to the Board for consideration because neither party actually addressed the issue as set forth in our underlying papers. So the proper recourse is remand for the Board to consider the issue. And on the point of waiver, Vivint makes the point in its papers that Alarm.com waived the argument of remand on the Claim 18 issue. We would respectfully suggest that either both parties waive the issue or neither party waive the issue because below, no party addressed the issue of claim construction. We don't think there is an error here, but if there is an error and you cannot find that there is substantial evidence in the record, then we would request again, as we did in our papers, that the issue be remanded to the Board for consideration. But for all of those reasons, we respectfully request that the Board's decision be affirmed with respect to the Claim 17 claims as well as the Claim 18 claims. Thank you. Any questions? No questions. Thank you. Mr. Stern? Your Honors, my calculation is I have six minutes left, which is not normal for me to have on rebuttal. So let me address four points, if I may. First of all, a display. That's the display over there, Your Honors. We don't know what's being displayed. It could be a blank screen. Just because you have a computer display doesn't mean you're displaying any information to the user, which is required by the claims. You could have a blank screen or you could be watching the World Cup. But there's nothing in Osman that discloses a map, that uses the word map. There's nothing in Osman that states that you display anything to the user when you use the profile editor. You could imagine, and we're speculating now, so we're now in obviousness land, as my colleague kept taking us to throughout her oral argument, I submit, you could speculate all kinds of things by picking and choosing from the Osman disclosure. But the reality is that the claims lay out a protected method, and that method is not laid out. It is not disclosed in Osman. So we have no idea if any information is being provided to the user. The user may be able to input information, maybe in the form of equations, data, who knows? What are we to make of paragraph 31 in Osman that refers to a display and then about eight lines later, with a little paragraph intervening, states this is essentially explaining in greater detail with reference to figures A and B, 8A and B. That's not a display? 8A and B aren't a display of a map? Now which paragraph are you in again, Your Honor? 31. 31. 33. Right. And it says, and I read, the profile editor enables a user to edit his reminder profile or even multiple reminder profiles via man-machine interface, such as a display and keyboard, typical computer, or any suitable input-output mechanism, such as a mouse or stylus with a touch screen display or the like. Again, nothing, nothing in Osman talks about displaying information to the user in the form of a map. Nothing. It's completely silent, and what we're doing is filling the gap. This is a classic anticipation missing element case, and we've heard from counsel that they go through this over and over and over again, that Dr. Ryan says, well, Dr. Ryan is a professional expert who's in many of these proceedings, and he essentially laid out an obviousness argument in the record, but that's not what's here. What is here is expressed anticipation, and therefore we submit that the case should be reversed. But you never answered Judge Lori's question. He said that line 31, which includes the display and keyboard, combined with paragraph 33, which says this is subsequently explained in greater detail with reference to figure 8A and 8B. And if I misunderstand his question, I'm sure he'll correct me, but I thought that I was understanding him to ask you why shouldn't we assume, given that, and the board's fact-finding, which we review for substantial evidence in the expert's testimony, that when paragraph 33 says this is explained in subsequent, explained in greater detail with reference to 8A and 8B, that 8A and 8B are exactly what the profile editor is in fact displaying and what you can then use a keyboard or stylus or mouse to modify or a touchscreen display to modify. Your problem is the expert said that was the case, and we reviewed this for substantial evidence because it's a fact-finding. So I thought I understood Judge Lori's question to involve paragraph 33, which links figures 8A and 8B into the paragraph 31 disclosure of the display, keyboard, stylus, or other means of modification. Well, first of all, Your Honor, let me take it apart, if I may. Figures 8A and 8B are internal representations of the parameters of the reminder profile. Well, that's what you believe to be true, but that's not what their expert said. And this is a question of fact, and the board found in favor of their expert. We're talking about the disclosure in the patent. What in this patent says those are only internal representations, not displayed? Well, the patent is not. The patent is silent on that point. But you just said they're only internal representations. Those were your words. What in this patent tells me that? Because the patent doesn't state that 8A and 8B are ever provided to the user. So then they're not. If it doesn't state it, then you also can't say they're only internal representations. You don't know. At best, you don't know whether they're displayed or not. We do not know if they're displayed or not, Your Honor. That's the whole point. But their expert said that they were. And they talk about, in paragraph 31, a display in keyboard for the profile, which is going to be activated and enabled to be edited by the user, and then it points to paragraph 33, which links in or sucks in figures 8A and 8B. I don't understand why there isn't substantial evidence for their expert's testimony and therefore the board's fact-finding that figure 8A and 8B are what is displayed and what paragraph 31 describes as the user being able to manipulate with these various mechanisms. The expert is saying that you would assume that this is being displayed to the user. He never said assumed. He said it is displayed. His testimony was strong and clear. It wasn't ambivalent or equivocal. Well, if that is the rule. Show me where he was equivocal. Well, no, I didn't say it was equivocal, Your Honor. If that is the rule, that the expert is allowed to fill the gap through testimony like we have here, then anticipation law has just been eviscerated. He didn't fill the gap. He said this should be interpreted as these items being displayed, that that's what he understands to be disclosed from this reference by the combinations of paragraphs 31 and 33. Your Honor, there's no textual hook for what he's saying. He's speculating. The whole point about this case is it's all based on speculation that a map is displayed to a user. It's never found. It's never disclosed in Osman. If we can put an expert on to say, well, okay, I read this, and I'm going to tell you what a person of ordinary skill in the art would say reading this, and I'm going to tell you that it's displayed to the user, even though it's never said that it's displayed to the user. I mean, the user hypothetically could input numerical values, could input equations, but none of that is ever displayed to the user in the form of a map as required by the claims. We're making, we're piecing all this together under express anticipation. If that's what was intended by the board, it should have been instituted under obviousness, and therefore this case should be reversed. And they have forfeited their SAS argument, as we've said, and therefore we submit that this case is over. It should be reversed. I mean, otherwise I don't understand how anticipation law under the express anticipation case law works when you have a reference that is silent. Thank you, Your Honor. Thank you. Thank you both. The case is taken under submission.